HOLIDAY INNS, INC., APPELLEE, *v.* LIMBACH, TAX COMMR., APPELLANT.

[Cite as Holiday Inns, Inc. *v.* Limbach (1990), 48 Ohio St. 3d 34.]

(No. 88-1363 — Submitted November 8, 1989 — Decided January 10, 1990.)

*Strauss & Troy* and *C. Christopher Muth,* for appellee.

*Anthony J. Celebrezze, Jr.,* attorney general, and *Richard C. Farrin,* for appellant.

DOUGLAS, J. Appellant argues that the royalties paid for the use of the "system" were payments to use Holiday Inns' trademarks and service marks and that such payments are closely "akin to" income from patents and copyrights. Specifically, appellant contends that trademarks are intellectual property like patents and copyrights and that the clear intent of the General Assembly was to have the income from such property allocated to Ohio pursuant to R.C. 5733.051(G) (formerly R.C. 5733.051[A][7]). Further, appellant argues that at least part of the income received by appellee constituted technical assistance fees and, therefore, that all the subject royalties were properly allocable to Ohio, pursuant to R.C. 5733.051(G).

The sole issue before us is whether the royalty fees remitted to appellee from its Ohio licensees are allocable to Ohio pursuant to R.C. 5733.051(G), or apportionable to Ohio pursuant to R.C. 5733.051(H) and 5733.05(B)(2).

R.C. 5733.051(G) provides in relevant part:

"*Patent and copyright royalties and technical assistance fees,* not representing the principal source of gross receipts of the taxpayer, *are allocable to this state* to the extent that the activity of the payor thereof giving rise to the payment takes place in this state. * * *" (Emphasis added.)

In construing this statute, the intent of the legislature is clear. Patent and copyright royalties and technical assistance fees are allocable to this state. Appellant's contention that trademark royalties are "akin to" patent and copyright royalties and, as a result, that the General Assembly intended trademark royalties to be allocable to Ohio pursuant to R.C. 5733.051(G) is not well-taken. The question regarding what the General Assembly intended to enact will not be entertained when the meaning of what was enacted is clear and plainly expressed. *Slingluff* v. *Weaver* (1902), 66 Ohio St. 621, 64 N.E. 574, paragraph two of the syllabus. In ascertaining legislative intent, this court will give effect to the words used in the statute and it is not the duty of this court to insert words not used. *Cleveland Elec. Illum. Co.* v. *Cleveland* (1988), 37 Ohio St. 3d 50, 524 N.E. 2d 441, paragraph three of the syllabus. We must assume the General Assembly knew the differences between a patent, a copyright and a trademark. As the term "trademark" does not appear in R.C. 5733.051(G), appellant's intellectual property argument is not persuasive. The BTA correctly concluded that the subject royalties are not patent or copyright royalties as those terms are commonly used.

With regard to the language "technical assistance fees," the BTA defined the term as "* * * payment for mechanical, industrial, scientific or *practical aid, expertise or services.*" (Emphasis added.) The BTA concluded the subject royalties did not fall within this definition. We do not agree.

The BTA's determination was unreasonable in that licensees obtained a right to use the "system" in return for the payment of royalties. The "system" included, *inter alia,* the right to consultation and advice and the use of an operation manual detailing nearly every aspect of the hotel operation. Further, Gesell testified

that licensees were given *continuing* advice on the effective use of the Holiday Inn "system" so as to improve the profitability of the licensees' operations, as well as the profitability of Holiday Inns. These services provided by Holiday Inns pursuant to the license agreements clearly fit within the BTA's own definition of "technical assistance." This ongoing consultation provided licensees with practical aid in improving the quality of their services and their profitability. The agreements required consultation and advice regarding problems with the operation of a licensee's hotel so that Holiday Inns' *expertise* would be available in the event of such problems. Such practical aid and expertise fit the BTA's definition of "technical assistance" and it was unreasonable to conclude otherwise. Therefore, we hold the royalties were allocable to Ohio, pursuant to R.C. 5733.051(G), to the extent the activity of the payor giving rise to the payment took place in Ohio.

R.C. 1.42 requires that words and phrases contained in the Revised Code are to be construed according to their common usage. While the BTA did set forth a definition of the term "technical assistance fees" consistent with common usage, it erred in not including the subject royalties within such definition. At least part of the royalties paid were for the consultation and advice given licensees. While some part of the payments may have been for the use of the name "Holiday Inn" and the reputation for quality and service associated therewith, appellee failed to make the requisite showing as to what part of the fees was for consultation and advice and what part was not. As such, all such fees, as a matter of law, must be allocable to Ohio as technical assistance fees pursuant to R.C. 5733.051(G). It is the burden of the taxpayer to show the segregation of such payments. See *Alcan Aluminum Corp.* v. *Limbach* (1989), 42 Ohio St. 3d 121, 124, 537 N.E. 2d 1302, 1304.

Therefore, we hold that, pursuant to R.C. 5733.051(G), franchise fees or royalties remitted to a nondomiciliary franchisor by its Ohio franchisees are allocable to Ohio as "technical assistance fees" if any part thereof was paid for "technical assistance" within the common meaning of the phrase, unless the taxpayer can establish that another specific part thereof was not for "technical assistance" and was thus apportionable.

Accordingly, the decision of the BTA is reversed.

*Decision reversed.*

MOYER, C.J., SWEENEY, WRIGHT, H. BROWN and RESNICK, JJ., concur.

HOLMES, J., dissents.