Darrin DEATON, Plaintiff,

v.

DREIS AND KRUMP MANUFACTUR-
ING COMPANY, Defendant.

Civ. A. No. 89CV1661.

United States District Court,
N.D. Ohio, E.D.

Jan. 10, 1991.

As Amended Jan. 23, 1991.

Howard A. Schulman, John C. Meros, Schulman & Schulman, Cleveland, Ohio, for plaintiff.

Brett K. Bacon, Thompson, Hine & Flory, Cleveland, Ohio, for defendant.

## MEMORANDUM AND ORDER

ANN ALDRICH, District Judge.

A jury returned a verdict in favor of the plaintiff, Darrin Deaton, in the amount of $185,000, in this product liability case. The jury assessed $100,000 for past damages, and $85,000 for future damages. Now pending are Deaton's motions for costs and pre-judgment interest. In addition, the Court must adjust the judgment to reflect workers' compensation benefits pursuant to O.R.C. § 2317.45.

The Court grants Deaton's motion for costs, denies Deaton's motion for prejudgment interest, and concludes that the adjustment to the verdict for Deaton's workers' compensation benefits is completely offset by the contributions of Deaton's employer.

## I. BILL OF COSTS

Deaton seeks $3607.40 in costs pursuant to Federal Rule of Procedure 54(d), as follows:

1. Videotaped deposition used at trial:
   Dr. Daniel Cudnik, videotaping, copy of videotape, and copy of deposition transcript

   | | | |
   |---|---|---|
   | script | $474.30 | |
   | Showing of videotape | 191.00 | |
   | TOTAL ............................ | | $ 665.30 |

2. Depositions read at trial during cross examination of defense witnesses:

   | | | |
   |---|---|---|
   | Roy F. Gottschalk | $764.70 | |
   | Emmett McCarthy | 775.05 | |
   | John Jacob | 250.80 | |
   | TOTAL ............................ | | $1,790.55 |

3. Copies of deposition transcripts purchased for trial preparation and read during direct examination:

Gerald Rennell — $ 98.50
Darrin Deaton — 233.20

TOTAL ............................ — $ 331.70

4. Copies of plaintiff's exhibits and treatises as required by Court to be bound in two sets for Court and one for defense counsel: — $ 219.85

5. Large drawing of press brake machine used throughout trial by plaintiff and defendant as demonstrative evidence: — $ 600.00

TOTAL OF ALL EXPENSES ......... — $3,607.40

---

Dreis & Krump contests each of these requests.

In assessing costs under Rule 54(d), this Court is limited by 28 U.S.C. § 1920 which enumerates expenses that may be taxed. *Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482 U.S. 437, 441–42, 107 S.Ct. 2494, 2497, 96 L.Ed.2d 385 (1987); *Sales v. Marshall,* 873 F.2d 115, 119 (6th Cir.1989). Section 1920 provides as follows:

A judge or clerk of any court of the United States may tax as costs the following:

(1) Fees of the clerk and marshal;

(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation for court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1928 of this title.

A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree.

Rule 54(d) creates a presumption in favor of awarding costs, but the district court may, in its discretion, deny them. *White & White, Inc. v. American Hospital Supply Co.,* 786 F.2d 728, 730 (6th Cir.1986).

**A.**

Deaton first requests $665.30 for the videotaped testimony of Dr. Daniel Cudnik. Deaton notes that Dr. Cudnik's deposition was videotaped pursuant to Rule 32(a)(3)(E). *See also* Local Rule 14.01. Deaton states that Dreis & Krump was notified of his intent to proceed in that manner, in order to preserve Dr. Cudnik's testimony for trial, and that Dreis & Krump voiced no objection.[1] Dreis & Krump, however, views the videotape as an expense incurred to secure the testimony of a witness, and therefore concludes that Deaton's costs should be limited to the $30 statutory maximum for witness fees.

There is authority for both positions. In *Fressell v. A.T. & T. Technologies,* 103 F.R.D. 111, 116 (N.D.Ga.1984), for example, the court rejected a nearly identical claim, as follows:

The defendant [who was the prevailing party] presented a $600 charge for its

---

1. It is also notable that this Court's pre-trial order suggests that counsel preserve the deposition testimony of their "key" witnesses by transcript or videotape for possible use at trial.

videotaping of a deposition of a witness who would not be available at trial. The defendant contends that the taping took place upon the agreement of counsel. However, a better characterization might be that plaintiffs' counsel consented to the decision of defendant's counsel to preserve the testimony of a witness in a more effective, although more expensive, manner. The court finds that the cost of the videotape fits more appropriately under subsection (3) as a variant of a witness fee, and the fee recovered for this videotaped testimony will be limited, as are other witness fees, by 28 U.S.C. § 1921, to $30.00 per diem.

On the other hand, the court in *Mastrapas v. New York Life Insurance Co.*, 93 F.R.D. 401, 406–07 (E.D.Mich.1982), awarded the cost of videotaping the depositions of two physicians where the videotapes were presented at trial. The court concluded that the depositions were reasonably necessary to the presentation of the defendant's case, since the physical condition of the plaintiff was a material issue in dispute, and awarded $790 as deposition-related expenses. *Id. Accord Desisto College v. Town of Howey-in-the-Hills*, 718 F.Supp. 906, 914 (M.D.Fla.1989), *aff'd*, 914 F.2d 267 (11th Cir.1990); *Sack v. Carnegie Mellon University*, 106 F.R.D. 561, 564 (W.D.Pa. 1985); *cf. Newman v. Grand Trunk Western Railroad Co.*, 781 F.2d 55, 56 (6th Cir.1985) (district court did not abuse its discretion in denying costs for videotaped deposition "which was of limited probative value to the jury in view of the other evidence in the case"); *Roberts v. Homelite Division of Textron, Inc.*, 117 F.R.D. 637, 640 (N.D.Ind.1987) (costs disallowed when prevailing party had previously agreed to bear expense when seeking leave for videotaped deposition).

This Court concludes that the better view is to consider the videotape as a deposition-related expense, rather than as a variant of a witness expense. Accordingly, Deaton should be awarded his full costs for the

videotaping and showing of Dr. Cudnik's deposition.[2]

### B.

Deaton next seeks $1790.55 for court reporter expenses and transcript fees for the depositions of three of Dreis & Krump's witnesses: Roy F. Gottschalk, Emmett McCarthy, and John Jacob. Deaton points out that his counsel read sections of these depositions during cross-examination, and contends that they were reasonably necessary to present his case at trial. Deaton also seeks $331.70 for the purchase of transcripts of his own deposition and that of his expert, Gerald Rennell. Again, he contends that these transcripts were "reasonably necessary" for trial. Deaton points out that Dreis & Krump used selected sections of Rennell's deposition on cross-examination, after which (on re-direct) Deaton presented other sections of Rennell's deposition. Finally, although Deaton concedes that no portions of his own deposition were read into the record at trial, he contends the transcript was "reasonably necessary" in order to allow his expert to review that deposition in preparing for trial.

Dreis & Krump contends that none of these deposition expenses should be allowed. The gravamen of Dreis & Krump's argument is that Deaton's use of the depositions at trial was minimal, and that they were otherwise used only for trial preparation and investigative purposes. Accordingly, Dreis & Krump urges the Court to deny these cost requests.

The Sixth Circuit recently explained the standards for awarding costs related to depositions:

... [S]ubsections (2) and (4) of § 1920 have been interpreted to authorize taxing as costs the expenses of taking, transcribing and reproducing depositions. Ordinarily, the costs of taking and transcribing depositions reasonably necessary for the litigation are allowed to the prevailing party. Necessity is deter-

---

**2.** Dreis & Krump does not contend that the doctor's deposition was not reasonably necessary for trial, which it must have been in order for Deaton to be entitled to this cost. *Sales*, 873

F.2d at 120 (discussed *infra*). Dr. Cudnik was the only physician called by either side, and he gave critical testimony concerning the nature and extent of Deaton's injury.

mined at the time of taking, and the fact that a deposition is not actually used at trial is not controlling. An allowance of deposition costs is reviewed for an abuse of discretion.

*Sales,* 873 F.2d at 120 (citations omitted).

■ The Court concludes that Deaton is entitled to all of these deposition expenses. Two of these witnesses, Gottschalk and McCarthy, testified as experts for Dreis & Krump. In addition, McCarthy, a Dreis & Krump corporate official, gave extensive testimony concerning Dreis & Krump's manufacture of the press brake machine. Jacob, a representative of Deaton's former employer, gave important testimony concerning the press brake machine and the circumstances surrounding Deaton's injury.[3] The Court notes that, for each witness, Deaton's attorney actually used the deposition during trial.

■ The Court also concludes that Deaton is entitled to the deposition transcript costs for his own witnesses. As noted, Deaton actually used Rennell's deposition transcript on re-direct examination after Dreis & Krump had attempted to discredit Rennell's testimony by using the same deposition on cross-examination. Deaton's own deposition was not referenced at trial, but Deaton points to *Perlman v. Feldmann,* 116 F.Supp. 102, 109–112 (D.Conn.1953), to support his position that he is entitled to recover his costs for obtaining a copy of his own deposition. There, the court held that where no copy of a deposition is filed with the Clerk of Court,

> the prevailing party whether he noticed the deposition or not is entitled to have

the cost of one copy purchased by him taxed in his favor. The holding is subject to the qualifications ... that the party noticing the deposition is not entitled to have the cost of his copy taxed if the taking and content of the deposition was not reasonably necessary ..., and that the adverse party is not entitled to have the cost taxed of so much of the transcript as covers cross-examination unreasonably prolonged or irrelevant.

*Id.* at 110. Indeed, this appears to be the generally accepted rule. *See* 10 Wright, Miller & Kane, *Federal Practice & Procedure* § 2676, at 339–41 (1983).[4] This Court does not require that depositions be filed with the Clerk, and they were not in fact filed in this case. There can be no doubt that Deaton was a critical witness sure to be called at trial; thus, it seems appropriate to tax these costs as well. *See generally* 50 A.L.R. Fed. 472, *Propriety Under 28 U.S.C. § 1920 and Rule 54(d) of the Federal Rules of Civil Procedure of Allowing Prevailing Party Costs for Copies of Depositions* (1980, Supp.1990).

### C.

■ Next, Deaton seeks $219.85 for making three copies of his exhibits and treatises: two for the Court and one for defense counsel. Deaton contends that he is entitled to this cost since the copies are required by this Court's pretrial order.[5] Deaton's claim is well-founded, and the Court concludes that he is entitled to this cost.

### D.

■ Finally, Deaton seeks $600 for a large diagram of the press brake machine.

---

3. Jacob, while a defense witness at trial, was listed as a potential witness by both parties. Jacob's deposition was apparently transcribed at Dreis & Krump's expense since Deaton seeks only costs for a copy of Jacob's deposition testimony.

4. Some courts have found that copy costs may be properly taxed even when there is a transcript on file with the Clerk of Court, since proper preparation for trial where the deposition is likely to be used requires the attorney to work closely with the transcript, not simply peruse it at the courthouse. *See* 6 Moore, Tag-

gart & Wicker, *Moore's Federal Practice* ¶ 54.77[4], at 54–426 & n. 25 (1990).

5. This Court's pretrial order requires that two copies, in addition to the original exhibits, be prepared for the Court. The exhibits also must be made available for inspection by opposing counsel. In practice before this Court, it is *expected that opposing counsel will be provided* with a set of exhibits for use during trial. Dreis & Krump misunderstands this Court's pretrial order by arguing that these three copies were provided only "for the convenience of counsel."

He points out that it was used by both counsel and witnesses throughout trial, including during Dreis & Krump's case. Dreis & Krump argues that the drawing of the press brake machine was not necessary to the understanding of the case, but rather that it was supplementary to, and cumulative of, the trial testimony. *See Robertson v. McCloskey*, 121 F.R.D. 131, 132–33 (D.D.C.1988).

Generally, it is within this Court's discretion under § 1920(4) to award the reasonable costs of photographs, maps, charts, diagrams, and similar items which are reasonably necessarily used at trial. 6 Moore, Taggart & Wicker, *Moore's Federal Practice* ¶ 54.77[6] (1990); 10 Wright, Miller & Kane, § 2677, at 364–69 (1983). In this case, the Court agrees that Deaton should be awarded $600 for preparation of the diagram of the press brake machine. The full color diagram was approximately $5 \times 7$ feet in size, drawn to scale, and also pictured a person standing next to the machine to illustrate relative proportion. As Deaton notes, the diagram was used throughout trial by both counsel, plaintiff's and defendant's expert witnesses, and several fact witnesses. The diagram was critical to the Court's own understanding of the operation of the press brake machine, and no doubt was of similar utility for the jurors. *See Esler v. Safeway Stores, Inc.*, 77 F.R.D. 479, 483 (W.D.Mo.1978); *DeThomas v. Delta S.S. Lines, Inc.*, 58 F.R.D. 335, 343–44 (D.P.R.1973).

## II. PRE–JUDGMENT INTEREST

■ Deaton also seeks prejudgment interest under O.R.C. § 1343.03. That statute provides that a party is entitled to prejudgment interest on a judgment

if, upon motion of any party to the action, the court determines at a hearing held subsequent to the verdict or decision in the action that the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case.

O.R.C. § 1343.03(C). The Ohio Supreme Court has explained the requirements of § 1343.03(C) as follows:

A party has not "failed to make a good faith effort to settle" under R.C. 1343.03(C) if he has (1) fully cooperated with discovery proceedings, (2) rationally evaluated his risks and potential liability, (3) not attempted to unnecessarily delay any of the proceedings, and (4) made a good faith monetary settlement offer or responded in good faith to an offer from the other party. If a party has a good faith, objectively reasonable belief that he has no liability, he need not make a monetary settlement offer.

*Kalain v. Smith*, 25 Ohio St.3d 157, 495 N.E.2d 572, 574 (1986). "The decision ... whether a party's settlement efforts indicate good faith is generally within the sound discretion of the trial court." *Id.* (citation omitted); *see also Stallworth v. City of Cleveland*, 893 F.2d 830, 834–36 (6th Cir.1990); *Bognar v. Zayre Corp.*, 702 F.Supp. 151, 154–55 (N.D.Ohio 1988).

Deaton sought damages of three million dollars in his complaint. Prior to trial, he made a settlement demand of $550,000; Dreis & Krump countered with an offer of $25,000, telling Deaton's counsel that a higher offer would be beyond its means. Shortly before trial began, Dreis & Krump raised its settlement offer to $75,000, and Deaton responded by offering to settle for $295,000. Before the jury returned its verdict, Deaton reduced his demand to $225,000.

Deaton argues that Dreis & Krump "failed to make a good faith effort to settle" under *Kalain* by (1) not rationally evaluating its risks and potential liability; and (2) not making good faith monetary settlement offers and not responding in good faith to Deaton's offers. However, this Court cannot agree. Deaton was required both to prove the elements of his claim of defective design or manufacture, and to overcome several affirmative defenses offered by Dreis & Krump; Deaton was also required to establish damages. The expert testimony presented at trial was in conflict, and Dreis & Krump made a

legitimate effort to discredit the credentials, methods, theories, and conclusions of Deaton's expert. Finally, the Court notes that the jury's verdict of $185,000 fell exactly midway between Deaton's and Dreis & Krump's final pre-trial settlement offers.

The Court concludes, viewing the facts in the light most favorable to Deaton, that it would not be appropriate to award Deaton pre-judgment interest on the theory that Dreis & Krump did not make a good faith attempt to settle the case. While recognizing that O.R.C. § 1343.03(C) requires a hearing if the Court awards prejudgment interest, this Court does not believe that a hearing is warranted in this case. *See Bognar*, 702 F.Supp. at 155–56. Moreover, the Court notes that Deaton did not request a hearing on this matter when he filed his motion, but only did so after Dreis & Krump requested a hearing in its responsive pleading. *See* Local Rule 3.01(1); *Bognar*, 702 F.Supp. at 156.

### III. COLLATERAL BENEFITS ADJUSTMENT

█ Ohio Revised Code § 2317.45 requires this Court to adjust the jury verdict to reflect any collateral benefits. In this case, as the parties agree, § 2317.45(B)(2)(c) requires the Court to subtract any workers' compensation benefits which Deaton received as a result of his injury.[6] Then, the Court must add back any amount, not to exceed the amount of the benefits, reflecting

> the total of the costs, premiums, or charges for such benefits paid or contributed within the three-year period immediately preceding the accrual of the cause of action, by the plaintiff, any member of his immediate family, or the employer of the plaintiff or any member of his immediate family.

§ 2317.45(B)(2)(b) (incorporated by reference in § 2317.45(B)(2)(c)(ii)).

Deaton received $11,618.64 in workers' compensation benefits, and his employer,

Ameco, Inc., paid $15,624.00 in premiums during the three year period preceding Deaton's injury; however, the amount of those premiums directly attributable to deductions from Deaton's paycheck was only $5.27. Deaton contends that the $11,618.64 he received in collateral benefits, which must be subtracted from the jury's verdict, is completely offset by his employer's contributions since those contributions exceed the amount of his benefits. Dreis & Krump, however, argues that the Court should only offset $5.27, the amount of Ameco's contribution directly attributable to Deaton.

The plain language of the statute leads this Court to conclude that Deaton's workers' compensation, which the statute requires be deducted from the verdict, is entirely offset by his employer's contribution. There are no qualifications in the statutory language, and it is a well-established principle in Ohio jurisprudence that the clear language of a statute must be given effect without judicial modification. *Hartford Fire Ins. v. Lawrence, Dykes, Goodenberger, Brower & Clancy*, 740 F.2d 1362, 1365 (6th Cir.1984); *Holiday Inns, Inc. v. Limbach*, 48 Ohio St.3d 34, 548 N.E.2d 929, 932 (1990); *Kneisley v. Lattimer–Stevens Co.*, 40 Ohio St.3d 354, 533 N.E.2d 743, 746 (1988). In this case, O.R.C. § 2317.45(B)(2) speaks in terms of "the total of the costs, premiums, or charges for such benefits paid or contributed ... by the employer of the plaintiff...." The qualification which Dreis & Krump seeks to add to this language, that the employer's contribution must be limited to that portion directly attributable to the plaintiff's employment, simply has no basis in the statutory language.

█ This conclusion is supported by the principle that statutes in derogation of the common law, such as this one, must be strictly construed. *Lee Turzillo Contracting Co. v. Cincinnati Metropolitan Housing Authority*, 10 Ohio St.2d 5, 225 N.E.2d

---

**6.** The statute also requires the Court to deduct certain medical expenses. However, the jury in this case was instructed to disregard medical expenses. The parties agree that the Court therefore should not consider medical benefits since Deaton's medical expenses are not reflected in the jury's verdict.

255, 259 (1967); *Weir v. Consolidated Rail Corp.*, 12 Ohio App.3d 63, 465 N.E.2d 1341, 1347 (1983). Prior to enactment of O.R.C. § 2317.45, Ohio followed the "collateral source rule", which precludes *any* subtraction from the jury award for collateral benefits, including workers' compensation benefits. *Jarrell v. Woodland Manufacturing Co.*, 7 Ohio App.3d 320, 455 N.E.2d 1015, 1018–19 (1982). Thus, under the pre-statute common law, Dreis & Krump would not be entitled to any deductions from the verdict of Deaton's workers' compensation benefits. To the extent that Deaton's common law recovery rights are restricted by O.R.C. § 2317.45, that restriction must be given a strict reading in his favor.

Finally, the Court notes that an Ohio Court of Appeals recently found O.R.C. § 2317.45 to violate both the United States and Ohio constitutions. *Cook v. Wineberry Deli, Inc.*, 1990 Ohio Misc. LEXIS 6 (Ohio Common Pleas, Summit Co., Oct. 8, 1990). The court stated:

> [A]ny determination of a set off by the Court of any collateral benefits received or which are "reasonably certain" to be received by the Plaintiffs from the jury determined compensatory award, would be tantamount to the type of arbitrary and unreasonable decision making which is blatantly in violation of the Plaintiffs' right to substantive due process.

> The Court finds that any award that the Court would make as to a collateral benefits set off violates that Plaintiffs' right to a jury trial, an open court and a fair and impartial remedy, their right to due process, their right to equal protection under the law, and is therefore unconstitutional.

*Id.* at 2. Neither Deaton nor Dreis & Krump have raised any of these issues. However, even if O.R.C. § 2317.45 is unconstitutional, the question is mooted by the fact that this Court has determined that Dreis & Krump is entitled to no setoff in this case.

## IV. CONCLUSION

Deaton's motion for $3607.40 in costs is granted. Deaton's motion for prejudgment interest is denied. No adjustment to the

final jury verdict will be made under O.R.C. § 2317.45, since Deaton's employer's contributions to the workers' compensation program exceeded Deaton's workers' compensation benefits.

Final judgment is therefore entered in favor of Deaton in the amount of $188,607.40.

IT IS SO ORDERED.